**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 05-2269

TUTTY ANDAYANI, et al.,

Petitioners,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,

John R. Gibson,[*] <u>Senior Circuit Judge</u>,

and Howard, <u>Circuit Judge</u>.

<u>William E. Graves, Jr.</u> and <u>Graves & Doyle</u> for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
<u>Greg D. Mack</u>, Senior Litigation Counsel, and <u>Thomas L. Holzman</u>,
Special Attorney, United States Department of Justice, Civil
Division, Office of Immigration Litigation, for respondent.

July 13, 2007

---

[*]Of the United States Court of Appeals for the Eighth
Circuit, sitting by designation.

**Per Curiam**.  Tutty Andayani, her husband, and their two minor children,[1] petition for review of an order of the Board of Immigration Appeals (BIA) summarily affirming an Immigration Judge's (IJ) denial of their applications for asylum and withholding of removal.  We deny the petition.

Andayani is a native and citizen of Indonesia who, with her two children, entered the United States on September 7, 2001 as a non-immigrant with authorization to remain until February 6, 2002.  Her husband, also a native and citizen of Indonesia, had previously been admitted to the country on a visa.  The entire family overstayed their authorizations.

In March 2002, Andayani filed an application for, inter alia, asylum and withholding of removal, and was subsequently interviewed by an asylum officer.[2]  The officer did not grant the application.  Subsequently, the Immigration and Naturalization Service ("INS") filed a Notice to Appear charging that Andayani, her husband, and her two children were subject to removal.

Thereafter, a hearing was held before an IJ at which

---

[1]Andayani is designated as the lead petitioner in this case. Because the claims of her husband and their two minor children are derivative of Andayani's asylum application, we do not discuss them separately.  See 8 U.S.C. § 1158(b)(3); Silva v. Ashcroft, 394 F.3d 1, 4 n.4 (1st Cir. 2005).

[2]Andayani also sought relief under the Convention Against Torture but has not briefed this claim on appeal, and therefore, we consider it waived.  See Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002).

Andayani and her family admitted the factual allegations in the Notice to Appear, conceded removability, and asked for asylum and withholding of removal. Andayani testified in support of her application as follows.

In 2001, Andayani lived with her husband and two children in Bandung, Indonesia. She characterized herself as a "moderate" Muslim and anti-fundamentalist but stated that as a "native" and a Muslim, she felt a certain degree of safety.

Andayani's husband came to the United States to study in early 2001. Shortly thereafter, Muslim "extremists" from a group called the "Jihad Army" began visiting houses in Andayani's neighborhood, asking for donations and participants to carry out their plans.

Initially, the men asked Andayani to join them, but when she refused, they demanded money and threatened her and her children. They asked about Andayani's husband and became upset when they learned he had gone to the United States. They called her husband a traitor and did not believe Andayani when she said she had no money. Andayani convinced the men to come back in two days for the money. They returned as requested and collected the equivalent of about $50 U.S. dollars. Over the next several weeks, these individuals returned several more times, and Andayani paid them the equivalent of about $200 U.S. dollars in total.

Andayani tried reporting the problem to the police, but

the police insisted on bribes and refused to take action. Andayani later sold her house in the summer of 2001 and moved to live with her parents in Jakarta. She experienced no further problems until she left for the United States in September 2001.

The IJ found Andayani credible but concluded that she failed to demonstrate an entitlement to relief. The IJ based this finding on Andayani's success in relocating within Indonesia without further significant incident. The IJ also noted that Andayani did not claim any physical violence and the only damage to her property was damage to her front door because it had been kicked in by the extremists during one of the visits. Andayani appealed to the BIA, which affirmed without opinion. Andayani then timely petitioned this court for review.

Where the BIA summarily affirms the IJ's decision, we review the IJ's decision directly.[3] Tota v. Gonzales, 457 F.3d 161, 165 (1st Cir. 2006); Akinfolarin v. Gonzales, 423 F.3d 39, 42 (1st Cir. 2005); 8 C.F.R. § 1003.1(e)(4). We review the IJ's denial of asylum and withholding of removal under the "substantial evidence" standard. Chreng v. Gonzales, 471 F.3d 14, 21 (1st Cir. 2006). Under this standard, the decision will stand unless the

---

[3]Andayani asserts that the BIA's use of its summary affirmance procedure, see 8 C.F.R. § 1003.1(e)(4), denied her due process of law. We have rejected such challenges before, see Disu v. Ashcroft, 338 F.3d 13, 18 (1st Cir. 2003); Albathani v. INS, 318 F.3d 365, 375-79 (1st Cir. 2003); El Moraghy v. Ashcroft, 331 F.3d 195, 205-06 (1st Cir. 2003), and do so again.

-4-

record evidence "would compel a reasonable factfinder to make a contrary determination." Pan v. Gonzales, 445 F.3d 60, 61 (1st Cir. 2006).

Under the Immigration and Nationality Act ("INA"), the Attorney General or the Secretary of Homeland Security may grant asylum to an applicant who establishes "refugee" status. 8 U.S.C. § 1158(b)(1)(A). Applicants can meet this burden by (1) demonstrating past persecution on the basis of one of five statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion; or (2) establishing they have a well-founded fear of future persecution based on one of the five statutory grounds. See 8 C.F.R. § 208.13(b). Establishing a well-founded fear of future persecution requires applicants to demonstrate that their fear is both genuine and objectively reasonable. See Khem v. Ashcroft, 342 F.3d 51, 53 (1st Cir. 2003). By establishing past persecution, applicants create a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1).

Andayani first asserts that the IJ's decision is unsupported because she established past persecution as a result of harassment on account of her perceived religious status as a "moderate" Muslim. Past persecution requires "more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). Conduct

-5-

of the quality and degree experienced by Andayani does not compel a finding of persecution. See Susanto v. Gonzales, 439 F.3d 57, 59 (1st Cir. 2006) (affirming finding of no persecution where petitioners were subjected to vandalization of their home, bombing of their church, and threats from crowds); see also Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005) (affirming finding of no persecution where petitioner suffered two police beatings within two years); Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir. 2000) (compiling cases; affirming finding of no persecution where petitioner was subjected to three episodes of solitary confinement, physical abuse, periodic surveillance, threatening phone calls, and occasional stops and searches).[4]

Andayani also has failed to show that the IJ's rejection of her future persecution claim was unsupported by substantial evidence. To show a well-founded fear of persecution, "an applicant must not only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." Toloza-Jimenez v. Gonzales, 457 F.3d 155, 161 (1st Cir. 2006) (quoting Laurent v. Ashcroft, 359 F.3d 59, 65

_____

[4]Andayani challenges the cases relied on by the IJ to support the finding of no persecution, Disu v. Ashcroft, 338 F.3d 13 (1st Cir. 2003), Velasquez v. Ashcroft, 342 F.3d 55 (1st Cir. 2003), and Khem v. Ashcroft, 342 F.3d 51 (1st Cir. 2003), on the grounds that they are either factually distinguishable or involved less credible applicants. The IJ, however, only referred to those cases to make the general point that Andayani's claim does not rise to the level of past persecution. The differences between these cases and Andayani's do not undermine the soundness of the IJ's decision.

(1st Cir. 2004)).   Andayani contends that the IJ failed to appreciate her fear of returning to Indonesia because he did not adequately consider the United States State Department Country Condition Report on Indonesia as evidence of targeted persecution of Muslim moderates by armed Islamic fundamentalist groups.

We have held that State Department Reports are "generally probative of country conditions," but that their findings must be considered within the context of the petitioner's specific claim. Chreng, 471 F.3d at 21.   The Country Condition Report does show that there are certain parts of Indonesia where armed extremist groups attack Muslims.   But the Report does not suggest that these abuses take place in Jakarta, where Andayani moved after receiving the threats.

An ability to relocate to another part of the country to avoid persecution weighs heavily against a well-founded fear of future persecution.   See 8 C.F.R. § 1208.13(b)(1)(i)(B), (b)(2)(ii); see also Susanto, 439 F.3d at 61 (family relocated to safer region during violent riots).   This is particularly true where, as here, the applicant's relatives have lived peacefully in another part of the country for an extended period. See Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005) (applicant's wife and daughter lived peacefully for a year at a relative's house in another area); Velasquez, 342 F.3d at 59 (numerous relatives of petitioners lived undisturbed in another part of the country for

over twenty years), abrogated on other grounds by Bocova v. Gonzales, 412 F.3d 257 (1st Cir. 2005); see also Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."). Andayani's parents have lived in Jakarta for many years without ever being bothered by fundamentalist Islamic militants. Accordingly, substantial evidence supports the IJ's conclusion that Andayani does not have a well-founded fear of future persecution.[5]

For these reasons, the denials of Andayani's claims for asylum and withholding of removal are supported by substantial evidence. The petition for review is therefore **denied**.

---

[5]Since Andayani failed to satisfy the more lenient asylum standard, she cannot satisfy the more demanding withholding of removal standard. See Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004).